## Allen v. Kemp *et al.*

1. **Mortgage:** IN FORM OF DEED. A conveyance absolute in form, but which is executed for the purpose of securing a debt due from the grantor to the grantee, will, as against the latter, and subsequent purchasers chargeable with notice, be regarded as a mortgage, and the premises embraced therein, or the proceeds thereof, may, to the extent of the surplus remaining after the satisfaction of the debt intended to be secured, be subjected to the payment of a debt held by a creditor against the grantor.

2. —— ESTOPPEL. Where it appeared that such creditor, prior to that time, but after the execution of the deed to such grantee, entered into an arrangement with the different parties interested in the property, including said grantee, in respect to a mortgage existing. on the property, executed by a former owner, to the effect that such creditor should buy in the property and then quit-claim to the

owners of the different parts including such grantee, which was accordingly done, it was *held,* in the proceeding by the creditor to subject the land to the payment of his debt against the grantor, that he was not estopped by such facts from denying the absolute title of the grantee, and asserting that he only held it in the capacity of a mortgagee

### *Appeal from Polk District Court.*

### WEDNESDAY, AUGUST 31.

ACTION in equity by a creditor to set aside certain alleged fraudulent conveyances, and to subject the property, to wit, the south half of the west one-third of lot number eight in block number thirty-one, in the original town of Fort Des Moines, to the payment of his judgment. The district court dismissed the petition, and the plaintiff appeals. The further necessary facts are stated in the opinion.

*D. O. Finch* and *Polk & Hubbell* for the appellant.

*Phillips, Gatch & Phillips* for the appellees.

COLE, Ch. J.—The plaintiff is the owner of a judgment against the defendant James F. Kemp, upon which

1. MORTGAGE: in form of deed.
he has had execution, with return of "no property." He brings this suit, claiming to subject the property in question to the payment of his judgment, upon two grounds: first, that the conveyances of the property by James F. Kemp to William Kemp, and afterwards by William Kemp to James G. J. Kemp, were fraudulent and void, being made to hinder and delay creditors; second, that the conveyance by James F. Kemp to William Kemp, though absolute in form, was, nevertheless, but a mortgage to secure an indebtedness by James to William, and that such indebtedness has been paid by the rents of the property; and that Thomas G. J. Kemp

had knowledge of the fact that the conveyance was but a mortgage, and further, that he had not fully paid the consideration.

There is much in the testimony tending to establish actual fraud in the conveyance by James F. to William Kemp. It was made by a son to a father ; the son was greatly embarrassed in his business, and, indeed, actually insolvent, and his condition must have been known to his father, the grantee, who had access to his books, and was aiding him in his business. It was made while the plaintiff's action, in which he recovered his judgment, was pending, and just before the judgment was rendered. The claimed consideration for the conveyance was an indebtedness by James F. to his father, having its origin nearly ten years prior to the making of the deed, and the exact amount of which cannot be stated by either. The wife of the grantor, James F., who was then and still is living with him, did not join in the conveyance, nor is any reason given therefor, or showing of her refusal to join, or of her being requested so to do. The nominal consideration for the conveyance, as expressed in the deed and stated by the parties to it, is much less than its actual value. A part of the rents after the conveyance were paid by the grantee to the wife of the grantor. The grantee in his disposition peremptorily refuses to answer several legitimate and pertinent questions, the answers to which would likely disclose the true character of the conveyance, and this, too, without any claim by him that the answers would tend to criminate him. Other facts having a like tendency might be stated ; but it is not necessary, since we will not definitely determine the question of fraud, nor ground our decision thereon ; another basis, free from all doubt, being found in the record, whereon complete equity to these parties may be administered.

It is established by the proven admissions of William

Allen v. Kemp.

Kemp, that, beyond all doubt, the purpose of the conveyance, as between James F. and William Kemp, was to secure the latter in whatever sum the former was indebted to him. At most it was but a mortgage.

It is furthermore equally well shown, that while Thomas G. J. Kemp agreed to pay his father, William Kemp $2,500 for the property, he has only paid thereon a note for $700, which he held against his father, and a note against another person for $100 ; for the balance he gave his two notes, for $800 and $900 respectively. Upon these notes he claims to have applied the sum of $340, out of the rents received by him for the property, leaving a balance still due from him, considerably in excess of the amount of plaintiff's claim. The evidence shows that the conveyance by William Kemp to his son, Thomas G. J. Kemp, was made but a few days before this proceeding was commenced, and while the plaintiff's attorneys were pressing the father to arrange the claim, in some way, with the property. The conveyance was by a father to his son. The son then had no other means, so far as appears, for the purchase of the property except the two notes paid thereon. The conveyance to him was absolute, and his own promissory notes for more than two-thirds the consideration were taken without any security for their payment. The only reason given by him for the purchase at the time from his father was to secure and get payment of the note he held against his father ; but he does not explain how his father was to get security or payment of the notes he gave for the property. In his answer as garnishee, in another proceeding to subject the same property, which answer was introduced in evidence, he states that he always supposed his brother conveyed the property to his father to secure what his brother owed his father. Under this proof we have no difficulty in holding that the defendant Thomas G. J. Kemp holds the prop-

erty subject to all the equities which existed against it in the hands of his father, William Kemp. And certainly he cannot object, under his own evidence, to being held chargeable with knowledge of the fact that his father's title was that of a mortgagee. There is no showing that the notes given by Thomas to his father were negotiable, or that the ownership thereof has been transferred to another.

One other matter requires notice. Prior to the purchase of the property by James F. Kemp, a former owner of it 2. — estoppel. and other property had mortgaged all to secure a loan from the school fund. After the conveyance to William Kemp, this school fund mortgage was foreclosed against all the property mortgaged and the owners thereof, this plaintiff being the owner of a part of it and a party to that proceeding. After the decree of foreclosure it was agreed by all the parties interested in the mortgaged property, that the whole of it should be bought at the foreclosure sale by this plaintiff, and then he should quitclaim to the owners of the different parts thereof, upon payment to him of their respective *pro rata* proportions. Under this agreement, the defendant William Kemp paid the proportion chargeable to the property in controversy, it being thirty-seven dollars, to the plaintiff herein, who thereupon executed to him a quitclaim therefore. This quitclaim deed is now set up as a bar to the plaintiff's recovery in this action. We hold that the quitclaim deed is to be construed in connection with the agreement, the purchase in trust at the sale, and all the facts surrounding the transaction; and, being thus construed, it constitutes no bar to plaintiff's claim herein, but is simply a conveyance as by a trustee, and relieves the property from the mortgage incumbrance.

It follows, therefore, that the judgment must be reversed. An account of the indebtedness by James F.

Allen v. Kemp.

Kemp to his father, William Kemp, at the date of the conveyance, will be taken. An account of the goods received and of the notes, accounts, etc., collected by William, which belonged to James F., and also of the rents received, and by whom and when received, above actual cost of repairs, and by whom and when made since the conveyance will also be taken. The balance will be struck. The property will be ordered to be sold under special execution, the first proceeds to be applied in payment of any balance due William Kemp, if there shall be any; the money, however, to be paid to Thomas G. J. Kemp, to the extent, if any, which may be necessary, when added to the rents received by him over and above cost of repairs made by him, to re-imburse him for the amount actually paid by him to William Kemp for the property. The balance of the proceeds will be applied, so far as necessary, to the payment of plaintiff's claim; or the defendant Thomas G. J. Kemp may pay to plaintiff the amount of his claim and have the title to the property quieted in him. The cause will be remanded to the district court for these supplemental proceedings, or, at the election of either party, they may be had in this court.

Reversed.